IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00320–PAB–KMT

MARK ALAN STREPKA,

      Plaintiff,

v.

SERGEANT GERALD JONSGAARD, Individually and his official capacity as Aurora City
Police Officer, and
CITY OF AURORA, COLORADO, a second class city and a municipal corporation of
Colorado,

      Defendants.

---

## ORDER AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendant Gerald Jonsgaard's Motion for Summary

Judgment and Memorandum Brief" (Doc. No. 73) and "Defendants' Motion to Strike Plaintiff's

Exhibits" (Doc. No. 102).

### STATEMENT OF THE CASE

      The following description is taken from Plaintiff's Prisoner Complaint (Doc. No. 3

[Compl.]) and the parties' submissions with respect to this Recommendation. The case arises

out of traffic offenses – which later rose to the level of felony eluding – committed by Plaintiff

and Defendant Jonsgaard's use of force during Plaintiff's subsequent arrest. Plaintiff brings suit

pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments.

On January 20, 2009, Plaintiff was allegedly speeding on eastbound East Colfax Avenue. Defendant Jonsgaard, an officer with the Aurora Police Department, driving a fully marked Aurora Police cruiser, activated his emergency equipment including emergency lights and siren, intending to execute a traffic stop.  Plaintiff did not stop.  Defendant Jonsgaard claims that Plaintiff sped through several intersections, including two red traffic lights.  Defendant Jonsgaard asserts that, for safety reasons, he turned off his emergency equipment and stopped pursuing Plaintiff, but continued to follow Plaintiff.  Within a few blocks, Plaintiff turned into the parking lot of an auto parts store.  He left his vehicle and began walking quickly toward the store.

Defendant Jonsgaard, in police uniform, also pulled into the parking lot, got out of his marked police vehicle with his gun drawn, loudly identified himself as a police officer, and ordered Plaintiff to stop and get down on the ground.  Defendant Jonsgaard asserts that Plaintiff did not respond to his command so he repeated it.  Defendant Jonsgaard claims that Plaintiff then turned, took two or three steps towards Defendant Jonsgaard, stated, "Fuck you, I'm not getting on the ground," then turned back toward the business.  Defendant Jonsgaard asserts that he holstered his weapon, drew his Taser and again yelled for Plaintiff to stop and get down on the ground.  Defendant Jonsgaard stated that Plaintiff again turned towards him and again said, "Fuck you, I'm not getting on the ground," and started to turn back towards the business.  Defendant Jonsgaard also claims that Plaintiff began reaching into the waistband of his pants.

According to Defendant Jonsgaard, because of Plaintiff's actions, he deployed his Taser on Plaintiff.  Defendant Jonsgaard perceived no reaction by the plaintiff to the Taser, so he

dropped the Taser and threw a "cross-face" maneuver at Plaintiff, catching Plaintiff's face against his biceps, taking Plaintiff to the ground with Defendant Jonsgaard on top of him. Defendant Jonsgaard claims that, when he made contact with Plaintiff, the Taser was still active and he, too, was impacted by the charge.  Defendant Jonsgaard states the he received the charge across his arm and he believed that Plaintiff received the charge across his face and head. Defendant Jonsgaard asserts that, when the charge ceased, Plaintiff continued to struggle but Defendant Jonsgaard had him pinned to the ground.

Defendant Jonsgaard radioed for backup help and several undercover officers arrived and helped place Plaintiff in handcuffs.  Plaintiff was arrested for reckless driving and eluding arrest. Defendant Jonsgaard asserts that he did not notice any serious injuries to Plaintiff and was not involved in processing Plaintiff or checking him for injuries, nor did he have any further contact with the plaintiff after the placement of handcuffs.  Medical attention was not summoned to the scene.

Plaintiff denies that he was speeding, ran any red traffic signals or otherwise violated any traffic laws.[1]  Plaintiff claims that he was wearing a stocking cap which limited his hearing abilities and was not aware of Defendant Jonsgaard's existence until Plaintiff was in front of the auto parts store.  Plaintiff also claims that there was a person inside the auto parts store and another person handling a trash can just outside the store with whom Plaintiff briefly spoke upon first arriving at the parking lot.  Plaintiff asserts that Defendant Jonsgaard never directed his

---

[1] It is undisputed that the Plaintiff was eventually convicted after a jury trial of felony vehicular eluding and resisting arrest in Arapahoe County Court case number 2009CR000170.

3

speech at Plaintiff or indicated to which person he was speaking, never advised Plaintiff that he intended to arrest Plaintiff, and Tasered Plaintiff without warning of his intent to deploy the Taser.  Plaintiff denies that he made any threats, either physical or verbal, to Defendant Jonsgaard or anyone else and denies that he reached into his pockets or waistband.  Plaintiff claims that he was affected by the Taser and he could not move.  Plaintiff alleges that Defendant Jonsgaard Tasered him several times, including in the head, and blind-side tackled him.  He also alleges that Defendant Jonsgaard slammed Plaintiff's head into the pavement at least three times. Plaintiff asserts that he suffered broken bones in the pelvic region, a concussion, cuts, bruises, scrapes and contusions, and an injured right shoulder and socket.  He claims that he complained at the scene to Defendant Jonsgaard and others about headaches, dizziness, and some disorientation.  He alleges that Defendant Jonsgaard did not summon prompt medical attention or direct that Plaintiff be taken to a hospital for medical attention for the injuries he sustained during the arrest.

Plaintiff brings claims against Defendant Jonsgaard in his individual and official capacities for excessive force and failure to provide and summon prompt medical attention. (Compl. at 4–5.2.)  He also sues the City of Aurora, under *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978), regarding the City's policies for the use of force by peace officers, punishment by peace officers, and the provision of medical attention to arrestees. (*See id.* at 6-6.1.)  He seeks $500,000 in damages.  (*Id.* at 8.)

Defendant Jonsgaard moves for summary judgment based on qualified immunity.  (Doc. No. 73.)  The City has not moved for summary judgment.

4

## PROCEDURAL BACKGROUND

Plaintiff filed his complaint on February 16, 2010.  (Doc. No. 3.)  On June 1, 2010, Defendants filed a motion to dismiss, arguing that Plaintiff's excessive force claim against Defendant Jonsgaard was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and that, if Plaintiff could not demonstrate a constitutional violation by Defendant Jonsgaard, no action could lie against the City of Aurora.  (Doc. No. 20.)  This court's recommendation that Defendants' motion to dismiss be denied (Doc. No. 62) was accepted by District Judge Philip A. Brimmer on November 29, 2010  (Doc. No. 65).

Defendant Jonsgaard filed his Motion for Summary Judgment on qualified immunity grounds on February 7, 2011.  (Doc. No. 73 [MSJ].)  Plaintiff filed his opposition on March 25, 2011.  (Doc. No. 87 [Resp. to MSJ].)  Plaintiff also filed an addendum of exhibits to his opposition (Doc. No. 83) and "Plaintiff's Affidavit in Support of Complaint and for the Use in any Federal Rule 56 Proceedings or Litigation Usage" (Doc. No. 88 [Pl. Aff.]).  On April 18, 2011, Defendant Jonsgaard filed a reply in support of his Motion for Summary Judgment (Doc. No. 98 [Reply to MSJ]) and on April 20, 2011, both Defendants filed "Defendants' Motion to Strike Plaintiff's Exhibits" (Doc. No. 102 [Mot. Strike]).  Plaintiff filed "Plaintiff's Anticipatory Opposition to: Defendants' Motion to Strike Exhibits; and Fed. R. Civ. P. 78(a) Request" on April 22, 2011 (Doc. No. 105 [Resp. Mot. Strike].)  Defendants replied in support of their motion to strike on May 9, 2011 (Doc. No. 106 [Reply Mot. Strike].)  Defendant Jonsgaard's Motion for Summary Judgment and Defendants' Motion to Strike are both ripe for review and ruling.

**ORDER ON DEFENDANTS' MOTION TO STRIKE EXHIBITS**

Defendants move to strike certain of Plaintiff's exhibits submitted in response to Defendant Jonsgaard's motion for summary judgment.  Defendants claim that Plaintiff has submitted numerous exhibits which were never disclosed or provided during discovery.  (Mot. Strike at 2.)  Specifically, Defendants seek to strike Plaintiff's Exhibits 1, 9, 10, 13, 14, 16, 21, and 22 pursuant to Fed. R. Civ. P. 37(c).  Additionally, Defendants argue that Exhibits 13, 14, 16 and 21 contain unauthenticated hearsay and therefore should not be considered on summary judgment.

Fed. R. Civ. P. Rule 26(a)(1) requires a party, without awaiting a discovery request, to disclose certain information that the disclosing party may use to support its claims or defenses. A party must make initial disclosures based on the information then reasonably available to it. Fed. R. Civ. P. 26(a)(1)(E).  Fed. R. Civ. P. 26(e) imposes a duty to supplement disclosures and discovery responses in a timely manner.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to support evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Defendants argue that all of the challenged exhibits were available to Plaintiff during the discovery period, yet Plaintiff did not disclose them or provide them before discovery closed on January 7, 2011, and did not provide them to Defendants until he filed them in support of his opposition to Defendant Jonsgaard's motion for summary judgment, via the mailbox rule, on March 22, 2011.  (*See* Mot. Strike at 3-4.)  Defendants argue that Plaintiff cannot demonstrate

that his failure to provide these exhibits was substantially justified and that Plaintiff's failure to provide the exhibits is not harmless as they were not disclosed until after Defendant Jonsgaard filed his motion for summary judgment and after the dispositive motions deadline.

### *Exhibit 1*

Exhibit 1 is the transcript from a motions hearing in Plaintiff's state court criminal case. In his response, Plaintiff asserts that he did not provide this exhibit to defendants because defense counsel indicated at the preliminary scheduling conference that he would obtain the transcripts for Plaintiff's state court motions hearing and jury trial.  (Resp. Mot. Strike at 2.)  In reply, Defendants state that defense counsel does not recall making this offer but Defendants will withdraw their objection to Exhibit 1 if the court's records reflect that such an offer was made. (Reply Mot. Strike at 2.)

The audio recording from the July 1, 2010 preliminary scheduling conference reflects that Plaintiff announced that he had transcripts from his motion hearing and jury trial in his possession but the facility would not copy the transcripts for Plaintiff.  Counsel for Defendant Jonsgaard indicated that Defendants could obtain the transcripts directly from the court reporter, if Plaintiff provided the necessary information regarding the courtroom, trial date, hearing date, etc.  Plaintiff responded that Defendants already had this information in Exhibit 1 to Plaintiff's Response to Defendants' Motion to Dismiss pending at that time.  (*See* Doc. No. 25.)  Defense counsel confirmed that he had the exhibit and it provided the information needed to obtain the transcripts.  Accordingly, the court denies the Motion to Strike with respect to Exhibit 1.

***Exhibit 9***

Exhibit 9 is a Profile/Data Sheet for Plaintiff, which includes Plaintiff's booking photographs. Plaintiff claims that he provided this document to Defendants when it was made available to him pursuant to Fed. R. Civ. P. 26(e)(1)(A). Plaintiff attaches to his response two exhibits which indicate that on January 18, 2011, Plaintiff informed Defendants that he had received his booking photographs from the Arapahoe County Detention Facility and describes how Defendants could obtain a copy from the Arapahoe County Sheriff's Office, and on February 2, 2011, Plaintiff provided a black and white copy of the document to Defendants. (Resp. Mot. Strike, Exs. 1 and 2.) While the court recognizes that the discovery deadline passed on January 7, 2011, it appears that Plaintiff timely supplemented his disclosures as required by Fed. R. Civ. P. 26(e). Moreover, Plaintiff first provided Defendants with a description of the location of the document in accordance with Fed. R. Civ. P. 26(a)(1)(A)(ii) on January 18, 2011, before the dispositive motions deadline. The court finds that Plaintiff's failure, if any, was harmless and therefore denies the Motion to Strike with respect to Exhibit 9.

***Exhibit 10***

Exhibit 10 contains photographs of Plaintiff, purportedly taken by the public defender's office several days after Plaintiff's arrest. In light of the explanation provided by Plaintiff in his response, Defendants have withdrawn their request to strike this exhibit. (Resp. Mot. Strike at 2.; Reply Mot. Strike at 2.)

***Exhibit 22***

Exhibit 22 contains Plaintiff's medical records from the Arapahoe County Detention Facility (ACDF) and Denver Health Medical Center (DHMC).  In his response, Plaintiff claims that he provided Defendants with medical release forms to obtain his medical records and that, pursuant to Fed. R. Civ. P. 26(e)(1)(A), he provided his medical records to Defendants when they became available to him.  (Resp. Mot. Strike at 4.)  Defendants reply that, although Plaintiff provided releases to the Defendants, "Plaintiff imposed his own restrictions on the releases and authorized them only for a very limited period of time."  (Reply Mot. Strike at 3.)  Additionally, Defendants argue that the medical records were available to Plaintiff at any time, thus implying that Plaintiff should have obtained them earlier and provided them to Defendants before the close of discovery.  (*Id.*)

Attached as Exhibit 5 to Plaintiff's response is a note from Plaintiff to defense counsel dated October 19, 2010, which states:

> Pursuant to a brief discussion on October 08, 2010, during the execution of the Federal SDT at the ACDF: I am authorizing your "office" only in the execution of attached forms for the releasing [sic] of my medical information from the ACDF and Denver Health Hospital.  The forms are time dated and only the originals are of any "force and effect."  Additionally, once your office has obtained the records–then send me copies of those records obtained.  In furtherance, once this litigation is complete and final–then destroy all medical records.

(Resp. Mot. Strike, Ex. 5 (emphasis in original).)  The medical release forms authorize the release of Plaintiff's medical information postdating the January 21, 2009 incident from the ACDF and DHMC.  (*Id.*)  The authorizations expired on December 3, 2010.  (*Id.*)  On January

18, 2011, Plaintiff asked defense counsel about the status of his request for copies of his medical records. (*Id.* Ex. 1 n.1) On February 2, 2011, Plaintiff again asked defense counsel "are you going to obtain the Plaintiff's medial records from the ACDF and Denver Health Hospital . . . as were released upon your request? If so, please forward to me." (*Id.* Ex. 2.) There is no evidence of any response from Defendants.

Apparently, Plaintiff subsequently undertook his own records request and obtained his medical records. According to Exhibit 6 to his response, Plaintiff served Defendants with the medical records from the ACDF on March 15, 2011. (*Id.* Ex. 6.) Exhibit 6 also states that "more records may exist from Denver Health Hospital and are not readily available at this time . . . ." (*Id.*) To the extent the records from the DHMC were not provided on March 15, 2011, they were provided to Defendants nine days later in response to Defendant Jonsgaard's motion for summary judgment.

Plaintiff executed medical release forms for Defendants but Defendants did not obtain Plaintiff's medical records. Although Plaintiff restricted his authorization to a limited period of time – as would be appropriate and required for any valid medical release – Defendants do not claim that they attempted but were unable to obtain Plaintiff's medial records within this time. Plaintiff, apparently, was waiting to get copies of the records from Defendants. The court finds that Plaintiff timely supplemented his disclosures as required by Fed. R. Civ. P. 26(e) and that Plaintiff's failure to provide the documents during discovery was substantially justified by his understanding, after executing medical release forms for Defendants, that Defendants were going

to seek Plaintiff's medical records.  Accordingly, Defendants' Motion to Strike is denied as to Exhibit 22.

***Exhibits 13, 14, 16, 21***

Exhibits 13, 14, 16 and 21 all appear to be internet printouts.  Exhibit 13 is a printout from www.taser.com, which discusses basic electric principles.  Exhibit 14 is a "Taser Protect Life" document entitled "ECD Warnings, Instructions, and Information: Law Enforcement." Exhibit 16 is a printout from en.wikipedia.org entitled "File:Gray321.png" which appears to be a diagram of the pelvis region.  Exhibit 21 is a printout from en.wikipedia.org entitled "X-ray."

In addition to arguing that these exhibits were not timely provided, Defendants argue that they are unauthenticated documents which contain inadmissible hearsay and therefore cannot be considered on summary judgment.  In his response, Plaintiff states that he has provided these documents, or their location, to Defendants; however, Plaintiff does not attempt to authenticate the documents.

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  As the nonmoving party, Plaintiff is not required to produce evidence "in a *form* that would be admissible at trial, but the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995) (emphasis in original) (citations and quotation omitted).

As a condition precedent to admissibility, Fed. R. Evid. 901 requires authentication or identification with "evidence sufficient to support a finding that the matter in question is what its

11

proponent claims."  Plaintiff has offered no evidence to suggest that Exhibits 13, 14, 16 and 21

are what he claims them to be.  Exhibits 13, 14, 16 and 21 are not authenticated or sufficiently

identified, and contain no facial indicia of reliability.  *See Jaramillo v. R & S Steel, Inc.*,

10-cv-00346-REB-BNB, 2011 WL 662778, at *3 (D. Colo. Jan. 20, 2011).  Notably,

"Wikipedia" is admittedly "the free encyclopedia that anyone can edit."  *See*

http://en.wikipedia.org/wiki/Main_Page, last visited June 22, 2011.  Exhibits 13, 14, 16 and 21

appear to be inadmissible hearsay.

Accordingly, The Motion to Strike is granted as to Exhibits 13, 14, 16 and 21 and said

exhibits are stricken and will not be considered by the court in making a recommendation on

Defendant Jonsgaard's motion for summary judgment.

## RECOMMENDATION ON DEFENDANT JONSGAARD'S MOTION FOR SUMMARY JUDGMENT

**A.    Legal Standards**

*1.    Summary Judgment*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgments as a matter of law."  Fed. R. Civ.

P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once

the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a

genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party

1of33

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson*, 594 F.3d at 1209-10.  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### 2.       *Qualified Immunity*

Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Id.*

### B.       Analysis

### 1.       *Fourth Amendment–Excessive Force*

Plaintiff alleges that Defendant Jonsgaard's use of a Taser, blind side tackle, and causing Plaintiff's head to repeatedly hit the pavement during his struggle to arrest the plaintiff amounted to excessive force.

a)        **Constitutional Violation**

Plaintiff's excessive force claim is governed by the Fourth Amendment's "objective reasonableness" standard. *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). As the Tenth Circuit has succinctly explained,

> The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest. To determine whether the force used in a particular case is excessive "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, (1989) (quotations omitted). The ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 397 (quotations omitted). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

*Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Moreover, the court must judge the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Cavanaugh*, 625 F.3d at 664-65 (citing *Graham*, 490 U.S. at 396). Thus, the reasonableness determination must "allow[] for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary in a particular situation." *Id.* (citations omitted).

Defendant Jonsgaard first argues that Plaintiff must establish actual physical injury in order to prevail on an excessive force claim under the Fourth Amendment. (MSJ at 9-10.) He

asserts that there is no objective evidence of physical injury, other than some abrasions, which, Defendant implies, are insufficient to establish actual injury.  (*Id.*)

This argument fails on both points.  First, Defendant mistakes the law.  In the Tenth Circuit, proof of physical injury is not required in excessive force cases.[2]  *See Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009) ("Our holding in *Cortez [v. McCauley*, 478 F.3d 1108 (10th Cir.2007)] acknowledged—and did not overrule—our prior conclusion that in excessive force cases proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element." (internal quotations omitted)).  This is because "'the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests–a person's sense of security and individual dignity.'"  *Id.* (quoting *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)).

---

[2] The circuit has, however, required a plaintiff to establish some "non-*de minimis* actual injury" in handcuffing cases.  *Fisher*, 584 F.3d at 898.  In support of his argument Defendant Jonsgaard cites a mix of cases that are inapplicable to the facts of this case either because they involved application of the Fourteenth Amendment's due process standard, *Latta v. Keryte*, 118 F.3d 693 (10th Cir. 1997); *Bella v. Chamberlain*, 24 F.3d 1251 (10th Cir. 1994), or because they were handcuffing cases, *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997); *Hannula v. City of Lakewood*, 907 F.2d 129 (10th Cir.1990) (abrogated on other grounds by *Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991)); *Palmer v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, 72 F. Supp. 2d 1237 (citing *Hannula*), or are distinguishable, *Culver v. Town of Torrington, Wyo.*, 930 F.2d 1456 (10th Cir. 1991) (holding that the plaintiff failed to demonstrate that the alleged use of excessive force caused her injuries).

Second, even if there was an actual physical injury requirement, the record contains evidence of physical injury.[3]  In his affidavit, Plaintiff swears that he felt a shock and excruciating pain when Defendant Jonsgaard deployed the Taser (Pl. Aff. at ¶ 8) and a very severe and painful shock to the head and face when he was allegedly tackled by Defendant Jonsgaard (*id.* ¶ 9).  Plaintiff claims that after tackling him to the ground, Defendant Jonsgaard was on Plaintiff's back with all of his weight.  (Compl. at 5; Pl. Aff. at ¶ 11.)  He alleges that Defendant Jonsgaard "raised and slammed the Plaintiff's head at least three times into the pavement while the Plaintiff was rendered incapable of defending himself."  (Compl. at 5-5.1; Pl. Aff. at ¶ 18.)  Plaintiff swears that he sustained an injury to his right knee and to his pelvic region resulting in intense pain in the pelvic area when Defendant Jonsgaard tackled him.  (Pl. Aff. at  ¶ 11.).

Defendant Jonsgaard testified at Plaintiff's criminal trial that when he tackled Plaintiff to the ground, he received the charge from the Taser which was still firing.  (MSJ Ex. A at 31-32.) He stated that he went to the ground on top of Plaintiff and they were both rendered immobile until the charge ceased.  (*Id.* at 33:5-10.)  Defendant Jonsgaard asserted that he lost contact with Plaintiff's right hand, so he pinned it down with his right knee and "goose-necked" Plaintiff's left arm up behind his back.  (*Id.* at 33:20-34:2.)  Defendant Jonsgaard stated that Plaintiff continued to struggle but Defendant Jonsgaard had him pinned to the ground in what he

---

[3] Although the court declined to strike Plaintiff's booking photographs and photographs purportedly taken by the public defender's office seven days after Plaintiff's arrest, the black and white copies of these photographs received by the court are indiscernible and therefore do not play a part in the court's recommendation.

described as "prone controlled."  (*Id.* at 34:15-19; *see also* 42:19-23; Doc. No. 83, Ex. 1 at 44:8-15.)  Defendant Jonsgaard did not dispute that he substantially outweighed Plaintiff at the time of the incident.  (Ex. A at 42:24- 43:7; Ex. 1 at 44:12-15.)

On the Initial Medical Screen from the Aurora Detention Center on January 20, 2009, the date of the incident, a nurse at the facility indicates that Plaintiff complained of sharp right groin pain and exhibited multiple abrasions on his right hand.  (MSJ Ex. E.)  The following day, the health unit notes Plaintiff was unable to bear weight and complained of sharp pain radiating up both legs, however the medical person noted "no obvious injury to hips."  (MSJ Ex. G.)  Three hours later the medical unit notes that the x-rays were back and there was no fracture; however the plaintiff suffered from mild osteoarthritis.  (*Id.*)  Other medical records from the Arapahoe County Sheriff's Office indicate that Plaintiff was monitored for two days where he was complaining of hip and skull trauma.  (Doc. No. 84 [Ex. 22] at 5.)  His right eye was bruised and the right side of his face abraded.  (*Id.* at 7.)  On or about January 23, 2009, Plaintiff  was sent to Denver Health for a CT to rule out skull and pelvic fractures.  (*Id.* at 8.)  At DH he was assessed with hemotympanum,[4] a possible closed head injury, right orbital swelling ecchymoses,[5] and mastoid[6] fluid in his right ear.  (*Id.* at 14-18.)  Plaintiff's treatment was over-the-counter Tylenol.  (*Id.*)  In his testimony at Plaintiff's state court criminal trial, Defendant Jonsgaard reviewed

---

[4] "Blood in the middle ear."  Taber's Cyclopedic Medical Dictionary 930 (19th ed. 2001).

[5] "A bruise, that is, superficial bleeding under the skin or a mucous membrane."  Taber's at 633.

[6] A portion of the temporal bone.  *See* Taber's at 1248.

18

photographs taken of the Plaintiff seven days after the incident and acknowledged that Plaintiff had some discoloration of the eye; Defendant Jonsgaard described it as "a fairly good shiner" and stated that it could have come from hitting the pavement during Plaintiff's fight to avoid arrest. (MSJ Ex. A at 94:11-22.)

The evidence thus suggests an injury sufficient to satisfy any non-*de minimis* injury requirement. Accordingly, the court will consider the severity of the crime, whether Plaintiff posed an immediate threat to Defendant Jonsgaard or others, and whether Plaintiff was actively resisting or evading arrest at the time force was used on him.

At the scene, Plaintiff was arrested for reckless driving and eluding arrest. (Doc. No. 83, Ex. 1 at 46:8-10 & Ex. 3 at ECF p. 41.) He was convicted after trial of resisting arrest, a class 2 misdemeanor, and vehicular eluding, a class 5 felony. *See* Colo. Rev. Stat.§ 18-8-103 (resisting arrest); § 18-9-116.5 (vehicular eluding). Neither the traffic offense for reckless driving nor the misdemeanor resisting arrest are considered severe criminal activity, without other exigencies, in an excessive force analysis. *See Herrera v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, No. 09-2042, 2010 WL 226571 (10th Cir. 2010) (unpublished) (misdemeanor "resisting, evading or obstructing a police officer" not severe crime); *Fisher*, 584 F.3d at 895 (petty misdemeanor not severe); *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (same); *Casey*, 509 F.3d at 1281 (neither class three nor class one misdemeanor severe); *Giannetti v. City of Stillwater*, Nos. 06-6085, 06-6094, 2007 WL 441887, at *7 (10th Cir. 2007) (unpublished) (misdemeanor traffic offenses not severe). However, vehicular eluding, as a class 5 felony, is not a minor crime and will be considered by this court as relatively severe.

19

Although Plaintiff disputes that he was speeding twice the legal limit and running stop lights, it is undisputed that Defendant Jonsgaard was originally pursuing the plaintiff in a marked police car with activated emergency lights and siren and that Plaintiff did not pull over.[7] Because of the danger to the public posed by high speed chases, Defendant Jonsgaard eventually turned off his lights and siren when he realized Plaintiff was not going to pull over.  Having observed a driver whom Defendant Jonsgaard believed was committing vehicular eluding, Defendant Jonsgaard had  probable cause to arrest Plaintiff once he stopped and exited his car in the parking lot of the auto parts store.

The court  considers the jury's verdict and Plaintiff's conviction of felony vehicular eluding as an undisputed fact.  Vehicular eluding requires that a suspect knowingly elude or attempt to elude a peace officer, that he knew or reasonably should have known that he was being pursued by a peace officer, and that he operate his vehicle in a reckless manner.  *See* Colo. Rev. Stat. 18-9-116.5.  It is undisputed that these elements of the crime were proven beyond a reasonable doubt to a jury.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.  Moreover, to the extent Plaintiff is attempting to argue facts that would overturn his conviction, a claim for damages based on conduct whose unlawfulness would render a conviction or sentence invalid is not cognizable under § 1983.  *See also Heck v. Humphrey*,

---

[7] Plaintiff does not dispute that Defendant Jonsgaard had activated his emergency equipment and attempted to conduct a traffic stop on Plaintiff.  (*See* Pl. Aff. at ¶¶ 26, 27.)

512 U.S. 477 (1994).  Further, Plaintiff's subjective awareness or alleged non-awareness of

events prior to his arrest is irrelevant to the excessive force analysis.  The reasonableness of

Defendant Jonsgaard's actions must be assessed "from the perspective of a reasonable officer on

the scene . . . ."  *Graham*, 490 U.S. at 396.

It is beyond cavil that when a driver of a vehicle apparently willfully refuses to comply

with a traffic stop initiated by flashing lights and siren affixed to a fully marked police vehicle, a

reasonable officer would perceive a heightened threat posed by that driver.  Engaging in felony

eluding is an inherently dangerous activity which Defendant Jonsgaard recognized when he

turned off his lights and siren to avoid endangering the public.[8]  At the time Defendant Jonsgaard

approached Plaintiff in the parking lot, from the perspective of a reasonable officer on the scene,

the undisputed facts suggest that Plaintiff was not heeding a peace officer's emergency

equipment, and Plaintiff was refusing to comply with the shouted orders of a uniformed police

officer.[9]  It is clear that a reasonable officer would perceive a danger that the perpetrator would

---

[8] Defendant Jonsgaard argues further that "Plaintiff attempted to evade arrest, with a loaded weapon in his vehicle, when he continued to speed and proceed through red traffic signals after Sergeant Jonsgaard activated the emergency equipment on the marked police vehicle and pursued Plaintiff."  (MSJ at 11.)  Although it is not contested that a weapon loaded with ten bullets and with a round in the chamber was found in the Plaintiff's vehicle behind the driver's seat during an inventory search (MSJ Ex. C.), as Defendant Jonsgaard was not aware of the weapon at the time he arrested Plaintiff, it was not part of the "facts and circumstances" that informed his use force and will not be considered by the court.

[9]The court also will not consider Defendant Jonsgaard's allegation that Plaintiff cursed at him and verbally, affirmatively stated that he would not get on the ground since this fact is disputed.  There is no dispute, however, that Plaintiff did not comply with Defendant Jonsgaard's orders.

engage in activity that could endanger the officer and the members of the public given his continued evasive behavior and attempt to leave the presence of the officer on foot.

Defendant Jonsgaard also contends that Plaintiff resisted when Defendant Jonsgaard attempted to take him into custody, which caused further injury to both parties in the resulting struggle. (MSJ at 11.) Again, it is undisputed that Plaintiff was convicted by a jury of resisting arrest and the court therefore considers that fact. *See Heck*, 512 U.S. at 477. The plaintiff does not dispute that Defendant Jonsgaard was giving commands to someone while in the parking lot of the auto parts store.[10] (*See* Pl. Aff. at ¶¶ 5, 6, 7.) Further, Plaintiff does not dispute that Defendant Jonsgaard repeated his commands several times. Moreover, Plaintiff does not deny that Defendant Jonsgaard got out of his vehicle with his duty weapon drawn. (MSJ at ¶ 14.) Although Plaintiff maintains that he did not understand that Defendant Jonsgaard was directing his commands at him, Plaintiff's subjective awareness is not relevant to the perception of a reasonable police officer and the necessity to use force in effectuating an arrest. From the perspective of a reasonable officer, after failing to heed an officer's emergency equipment and continuing to speed and disobey traffic signals, Plaintiff was now failing to comply with his verbal commands, even at gunpoint. Clearly, a reasonable police officer would perceive that the

---

[10] Defendant Jonsgaard claims that, "prior to taking the Plaintiff to the Ground [sic], Sergeant Jonsgaard saw the Plaintiff reach into the front right waist band of his pants, causing Sergeant Jonsgaard to think the Plaintiff might be armed." (MSJ at 11.) Plaintiff denies that he reached into his pockets or waistband area and claims that he never made any threats either physical or verbal toward Defendant Jonsgaard or others. (Pl. Aff. at ¶¶ 14-17.) Since this fact is disputed, the court does not consider the alleged reach into the waistband in arriving at its decision herein.

plaintiff was danger to the officer and the auto parts customers and employees and that the plaintiff was resisting his imminent arrest.

Plaintiff next argues that the Aurora Police Department trains its officers that it is not appropriate to deploy a Taser on a suspect based on only non-compliance with verbal commands. (Resp. to MSJ at 18.)  It is undisputed that the Aurora Police Department's Taser Certification Test states that it is inappropriate "to deploy the TASER X26 on a suspect for verbal non-compliance *only*."  (*See* Doc. No. 83 Ex. 18 at question 29[emphasis added].)  Plaintiff's noncompliance, from the perspective of a reasonable officer, was not limited to non-compliance with verbal commands.  The undisputed facts show that Plaintiff had also failed to heed Defendant Jonsgaard's emergency equipment while in his vehicle, engaged in what Defendant Jonsgaard considered to be evidence of eluding, and failed to comply with orders shouted to him at gunpoint.  In addition, the Plaintiff willfully turned away from the officer and continued to walk away at a brisk pace, evidencing a refusal to submit to questioning and/or arrest.  The court concludes that, based on the totality of the undisputed facts and circumstances, a reasonable officer would find it appropriate to deploy a Taser at Plaintiff to stop him from leaving the scene, as well as to help control the Plaintiff and take him to the ground to gain his compliance with his arrest.

Once Defendant Jonsgaard tackled Plaintiff, Plaintiff continued to fight with the officer such that Defendant Jonsgaard was forced to call for help from fellow officers and was further forced to continue to struggle with the plaintiff until he was handcuffed.  Accordingly, Plaintiff has failed to establish that Defendant Jonsgaard violated the Fourth Amendment in Tasering him,

tackling him to the ground or in continuing to struggle with him until such time as handcuffs

were placed on him and other officers arrived to take custody of the plaintiff.

> ### b)      Clearly Established Law

Having found that Defendant Jonsgaard did not violate Plaintiff's constitutional rights by

tasing and tackling him, the court need not necessarily determine whether the law was "clearly

established" at that time.  However, the court concludes that Plaintiff also has failed to

demonstrate a violation of a clearly established right under the undisputed facts presented.

"The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Casey*, 509 F.3d at 1283-84.  In *Graham*, the Supreme Court unambiguously held

that uses of force that are not objectively reasonable are unconstitutional.  *Graham*, 490 U.S. at

395.  However, this "general proposition is not enough to turn *all* uses of excessive force into

violations of clearly established law." *Casey*, 509 F.3d at 1284 (emphasis in original) (citing

*Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  "In other words, the fact that it is clear that any

unreasonable use of force is unconstitutional does not mean that it is always clear *which* uses of

force are unreasonable." *Id.* (emphasis in original).  The Tenth Circuit has explained:

> "Ordinarily," we say that for a rule to be clearly established "there must be
> a Supreme Court or Tenth Circuit decision on point, or the clearly established
> weight of authority from other courts must have found the law to be as the
> plaintiff maintains." *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498
> (10th Cir.1992).  However, because excessive force jurisprudence requires an
> all-things-considered inquiry with "careful attention to the facts and
> circumstances of each particular case," *Graham*, 490 U.S. at 396, there will
> almost never be a previously published opinion involving exactly the same
> circumstances.  We cannot find qualified immunity wherever we have a new fact

24

> pattern.  *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir.2006) ("[A] general
> constitutional rule . . . can apply with obvious clarity to the specific conduct in
> question, even though [such conduct] has not previously been held unlawful."
> (quotations and alterations omitted)).  Indeed, the Supreme Court has warned that
> "officials can still be on notice that their conduct violates established law even in
> novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The
> Hope decision "'shifted the qualified immunity analysis from a scavenger hunt for
> prior cases with precisely the same facts toward the more relevant inquiry of
> whether the law put officials on fair notice that the described conduct was
> unconstitutional.'" *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir.2006)
> (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir.2004)).

*Id.*  Accordingly, the circuit has adopted a sliding scale approach: "The more obviously

egregious the conduct in light of prevailing constitutional principles, the less specificity is

required from prior case law to clearly establish the violation." *Id.* (citation omitted).

Plaintiff has not met his burden to demonstrate that the law was clearly established at the

time of the incident.  Plaintiff relies on two Tenth Circuit cases, predating the incident, in which

the officers' use of force against non-violent misdemeanants who were not fleeing or actively

resisting arrest was found to be excessive.  In *Casey*, the plaintiff removed a court file from the

municipal courthouse when he went to his truck to get money to pay the appeal fee.  As he was

returning to the courthouse he was intercepted and eventually "tackled, Tasered, knocked to the

ground by a bevy of police officers, beaten, and Tasered again, all without warning or

explanation."  509 F.3d at 1285.  The circuit stated that the plaintiff's conduct, at most a class

one misdemeanor, "was not a severe crime–if it amounted to a crime at all." *Id.* at 1281.  The

court noted that the officers had no reason to believe that the plaintiff was an immediate threat to

anyone's safety, nor was he attempting to flee the scene as "returning to the courthouse, rather

than to his truck [the plaintiff] would have made himself easier to capture, not harder." *Id.* at

25

1282.  The court also noted that the plaintiff he was never told he was under arrest or advised to stop resisting.  *Id.* at 1280.

In *Fogarty*, the plaintiff was drumming in an antiwar protest.  The defendants shot the plaintiff with a pepper ball or some other type of projectile, exposed him to tear gas, and tore a tendon as they forcibly dragged him across the street.  He was released without being charged with any crime.  Assuming that the plaintiff's actions may have amounted to disorderly conduct, the circuit noted that this petty misdemeanor was the least serious of the state criminal offenses. The circuit found no evidence that the plaintiff was an immediate threat to the officers or others nor was he resisting arrest or attempting to evade arrest.  The court noted that no one had notified the plaintiff that he was under arrest or "ask[ed] him to come along peacefully."  *Id.* at 1160.

The crimes at issue in this case are more severe.  Vehicular eluding is a felony offense, not a misdemeanor.  Although Plaintiff disputes that he posed a threat to Defendant Jonsgaard or others, the undisputed facts suggest that plaintiff had failed to respond to Defendant Jonsgaard's emergency equipment and failed to comply with Defendant Jonsgaard's verbal commands. Therefore, the officer's threat assessment relating to the Plaintiff was necessarily heightened. Accordingly, both *Casey* and *Fogarty* are clearly distinguishable on the undisputed facts.

The court finds this case more similar to the facts in *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007).  There, the defendant officer executed a traffic stop on the plaintiff for driving five miles over the speed limit and for failing to wear her seat belt.  She provided a suspended license.  *Id.*  During the course of the traffic stop, the plaintiff took a call from her mother and

refused to put down the phone so the officer could explain the citation to her.  The officer

warned her that she would be arrested unless she cooperated.  She continued with her

obstreperous behavior.  He then called a tow truck and asked for police backup.  When she still

refused to cooperate he told her that he would physically remove her from the car if she did not

get out of the car.  She refused to get out of the car; the officer sprayed her in the face with

pepper spray, and physically removed her from the car.

Although the traffic violations were minor, the circuit found the defendants' conduct

justified by safety concerns for themselves, the plaintiff and others as "the encounter played out

on the narrow shoulder of a busy interstate highway" and the plaintiff "had her keys and control

of the car while refusing to cooperate." *Id.* at 1205.  She also refused to comply with officers'

repeated instructions and warnings that she would be arrested if she failed to cooperate.  The

circuit noted that the plaintiff's conduct turned "what should have been a routine encounter []

into a fifty-minute ordeal requiring arrest." *Id.* at 1204.  An even worse situation confronted

Defendant Jonsgaard in this case where the Plaintiff had been eluding and was actively leaving

the scene in the face of the officer's commands.  Defendant Jonsgaard had every reason to

believe that his use of the non-lethal Taser and his physically tackling the Plaintiff in order to

stop and taken him into custody was reasonable.  Injuries sustained as a result of Plaintiff's

continued resistance were also reasonable given that the struggle was entirely of Plaintiff's own

making.

Thus, the court concludes that Plaintiff has not demonstrated that it would be clear to a

reasonable officer that Defendant Jonsgaard's conduct was unlawful in the situation he

confronted.  Accordingly, Defendant Jonsgaard is entitled to qualified immunity on Plaintiff's

excessive force claims.

   **2.     *Fourteenth Amendment-Failure to Provide Medical Attention***

   Plaintiff also alleges that, after he was arrested, Defendant Jonsgaard failed to summon

medical attention or direct that Plaintiff be taken to a hospital.

   The Fourteenth Amendment's due process clause provides pretrial detainees the same

degree of protection against the denial of medical attention which convicted inmates receive

under the Eighth Amendment.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Accordingly, the Tenth Circuit applies "an analysis identical to that applied in Eighth

Amendment cases" brought by prisoners.  *Olsen v. Latyon Hills Mall*, 312 F.3d 1304, 1315 (10th

Cir. 2002).

   To establish a constitutional violation, a plaintiff must show deliberate indifference to a

serious medical need.  *Martinez*, 563 F.3d at 1088.  "The test for deliberate indifference is both

objective and subjective."  *Id.*  To satisfy the objective component, a plaintiff must demonstrate

that his medical need is "objectively, sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825,

834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.

1999) (citation omitted).  To satisfy the subjective component, a plaintiff must demonstrate that

the defendant acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  The

official must "know of and disregard an excessive risk to inmate health and safety."  *Id.* at 837.

That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

Defendant Jonsgaard argues that there is no evidence of any medical need, let alone a serious medical need of which he should have been aware.  (MSJ at 12-13.)  Specifically, Defendant Jonsgaard claims that, with the exception of skin abrasions, for which he knew Plaintiff would be able to receive treatment at the jail, he was not aware of any injuries to Plaintiff.  (*Id.* at 13.)  He also claims that the medical screenings at the jail revealed nothing more than abrasions. (*Id.*)  Thus, Defendant Jonsgaard argues that he "could not have been aware of the medical conditions of which the Plaintiff now complains."  (*Id.*)

Plaintiff asserts that he notified Defendant Jonsgaard of his pain and injuries and that Defendant Jonsgaard "endorsed an APD form noting injuries."  (Resp. to MSJ at 25-26.)  He also argues that Defendant Jonsgaard "has not received any training by the City in the detection of MTBI or more commonly known as brain concussion" but that Defendant Jonsgaard testified that if his suspect had a concussion he would have called rescue.  (*Id.* at 24-25.)  Plaintiff also claims that the limited medical treatment at the scene and at the Aurora Detention Center, even considered "as a whole and collectively," was substantially inadequate.  (*Id.* at 26.)

The evidence does not establish a serious medical need of which Defendant Jonsgaard should have been aware at the scene of the arrest.  In his affidavit, Plaintiff states that he "complained about headaches, dizziness, and some disorientation after the uses of force on the affiant, with other pains, to Defendant Jonsgaard and others."  (Pl. Aff. at ¶ 19.)  Headaches, dizziness, and disorientation, without more, do not rise to the level of a "serious medical need."

*See Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 512 (11th Cir. 2010) (bloody

nose and mouth, facial bruising, pain, disorientation and blood clogs in arrestee's nose not

sufficiently serious); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (breathing

problems, chest pains, dizziness, sinus problems, headaches and loss of energy all relatively

minor); *Holland v. Hanks*, No. 97-3660, 1998 WL 93974, at *3 (7th Cir. 1998) (unpublished)

(eye irritation, nosebleeds, dizziness, headaches, and shortness of breath from second hand

smoke not sufficiently serious); *Kirkland v. Providence*, No. 94-6245, 1995 WL 377088, at *5

(10th Cir. 1995) (unpublished) (confusion and disorientation from medication not sufficiently

serious).

Plaintiff has also failed to establish that Defendant Jonsgaard knew of and disregarded

any risk to Plaintiff's health and safety.  Plaintiff avers that, "[w]hile at the Arapahoe County

Detention Facility [he] was issued crutches to get around because of the injury to the pelvis area

and being unable to bear any weight on the right leg" and that he "was also taken to the

courthouse in a wheelchair by the deputies." (Pl. Aff. at ¶ 34.)  However, Plaintiff does not

dispute Defendant Jonsgaard's trial testimony that he had no further contact with Plaintiff after

Plaintiff was handcuffed.  (Ex. A at 43-44.)  Evidence of his injury while at ACDF and when

taken to the courthouse does not establish that Defendant Jonsgaard was aware of these facts and

was deliberately indifferent at the scene of the arrest, especially in light of Plaintiff's medical

screen when taken to the jail immediately after the interaction with Defendant Jonsgaard.

Although the record does contain an Aurora Police Department form approved by Defendant

Jonsgaard, on which "Y" is circled next to "injuries" (*see* Doc. No. 83, Ex. 3), there is no

description of the injuries or other indication as to the severity of those injuries to suggest that Defendant Jonsgaard was aware of a substantial risk of harm to Plaintiff.

Finally, Plaintiff's argument that Defendant Jonsgaard had no training in the detection of "MTBI" or concussions is irrelevant to the analysis.  An injury not diagnosed by a physical examination must be "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt*, 199 F.3d at 1224.  Plaintiff's alleged complaint of headaches, dizziness and disorientation does not establish such an injury especially in light of both Plaintiff and Defendant Jonsgaard being subjected to a Taser shock and an ensuing forceful arrest. Defendant Jonsgaard's failure to summon medical attention for an injury whose severity is not evident either to him or to a lay person does not amount to deliberate indifference.  Plaintiff has failed to establish that Defendant Jonsgaard violated his constitutional rights under the Fourteenth Amendment; therefore Plaintiff cannot establish that Defendant Jonsgaard's alleged conduct violated any clearly established federal right, and Defendant Jonsgaard is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

WHEREFORE, for the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Strike Plaintiff's Exhibits" (Doc. No. 102) is GRANTED IN PART and DENIED IN PART.  It is granted to the extent that Exhibits 13, 14, 16 and 21are hereby STRICKEN.  It is denied in all other respects.  Further, the court respectfully

**RECOMMENDS** that "Defendant Gerald Jonsgaard's Motion for Summary Judgment and Memorandum Brief" (Doc. No. 73) be GRANTED on the basis of qualified immunity and that all claims be dismissed against Defendant Jonsgaard and he be dismissed from the case.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 18th day of July, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge