IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-00320-RBJ-KMT

MARK ALAN STREPKA,

     Plaintiff,

v.

SERGEANT GERALD JONSGAARD, Individually and in his official capacity as Aurora City
Police Officer, and
CITY OF AURORA, COLORADO, a second class city and a municipal corporation of Colorado

    Defendants.

---

# ORDER

---

This case was referred to United States Magistrate Judge Kathleen M. Tafoya, pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  On July 18, 2011, the Magistrate Judge issued a Recommendation (#118) concerning Defendant Jonsgaard's Motion for Summary Judgment (#73)[1].  The Magistrate Judge recommended that Defendant's Summary Judgment motion be granted.  On August 22, 2011, Plaintiff Mark Strepka, proceeding *pro se*, filed timely objections to the Recommendation (#126).[2]  Defendant Jonsgaard filed a response on September 6, 2011 (#131).

## Facts

---

[1] Magistrate Judge Tafoya's Order also ruled on Defendant's Motion to Strike Plaintiff's Exhibits (#102).  Because that was a final order, and was not objected to, it will not be reviewed in this order.  The City of Aurora has not moved for Summary Judgment.

[2] Pursuant to an Order granting Plaintiff's oral Motion for Extension of Time to Submit Objection to Order and Recommendation of United States Magistrate Judge, Plaintiff had until August 26, 2011 to file his objections (#122).

On January 20, 2009, Plaintiff was arrested for several traffic offenses, which ultimately led to his conviction for felony vehicular eluding.  Plaintiff brings suit pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for injuries resulting from Defendant Jonsgaard's use of force during Plaintiff's arrest.

The following facts are taken from Plaintiff's Prisoner Complaint (#3) and the party's filings regarding Summary Judgment.[3]  On January 20, 2009 Defendant Jonsgaard was on duty working as an officer for the Aurora Police Department.  While Defendant Jonsgaard was traveling eastbound on East Colfax Avenue in a marked police vehicle, the plaintiff passed Defendant Jonsgaard's vehicle.  Defendant Jonsgaard estimated that plaintiff's speed was between seventy and eighty miles per hour in a 35mph zone.  Plaintiff denies that he was speeding or driving recklessly. Defendant Jonsgaard activated his emergency lights and siren in pursuit of plaintiff's vehicle.  Plaintiff did not pull over and proceeded through a number of intersections and a red traffic signal.  For safety reasons, Defendant Jonsgaard deactivated his emergency lights and terminated his pursuit.  Defendant Jonsgaard then followed plaintiff into the parking lot of an auto parts store.  Plaintiff exited his vehicle and began to walk towards the store.

Defendant Jonsgaard exited his vehicle with his gun drawn, identified himself, and yelled for the plaintiff to stop and get on the ground.   Defendant Jonsgaard repeated his command after Plaintiff did not respond.  Defendant Jonsgaard contends that plaintiff turned and told Defendant Jonsgaard, "fuck you, I'm not getting on the ground" and started to reach into the waste-band of his pants.  Plaintiff vehemently disputes that he cursed at, threatened, or indeed responded at all to Defendant Jonsgaard's commands.  Plaintiff was wearing a knit hat that covered his ears and

---

[3]Defendant Jonsgaard's Motion for Summary Judgment (#73); Plaintiff's Response (#87); Defendant Jonsgaard's Reply (#98).

argues that he could not hear Defendant Jonsgaard's commands.  As a result, plaintiff argues that Defendant Jonsgaard used force without giving any warnings.

Defendant Jonsgaard then deployed his Taser at plaintiff.  Because the Taser did not impact the plaintiff, he used a "cross-face" maneuver to take plaintiff to the ground.  A cross-face maneuver is an approved arrest technique for the Aurora Police Department.  The Taser was still active when Defendant Jonsgaard made contact with the plaintiff and both Defendant Jonsgaard and plaintiff were impacted by the charge.  When the charge ceased, Defendant Jonsgaard contends that plaintiff continued to struggle and he had to pin him to the ground.  Plaintiff claims that in the struggle Defendant Jonsgaard slammed plaintiff's head into the pavement at least three times.  With the assistance of other officers who arrived at the scene, Defendant Jonsgaard handcuffed the plaintiff.

Plaintiff was arrested for reckless driving and was eventually convicted after a jury trial of felony vehicular eluding and resisting arrest in Arapahoe County Court (2009CR000170).  Defendant Jonsgaard asserts that he did not notice that plaintiff had any serious injuries at the scene of the arrest.  Plaintiff alleges that he had headaches, dizziness, and disorientation at the scene.  Plaintiff also claims that he suffered broken bones in his pelvis, a concussion, and an injured shoulder in addition to cuts and bruises.  Medical attention was not called to the scene.  Defendant Jonsgaard was not involved in checking plaintiff for injuries and had no further contact with plaintiff after plaintiff was handcuffed.

 On February 7, 2011 Defendant Jonsgaard filed a motion for summary judgment based on qualified immunity (#73).  The City of Aurora has not moved for summary judgment.  Plaintiff filed his opposition on March 25, 2011 (#87).  Defendant Jonsgaard filed a reply in support of his Motion for Summary Judgment on April 18, 2011 (#98).

**Standard of Review**

<u>Recommendation of the Magistrate Judge</u>

Following the issuance of a magistrate judge's recommendation on a dispositive matter

the district court judge must "determine *de novo* any part of the magistrate judge's disposition

that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to

"accept, reject, or modify the recommended disposition; receive further instruction; or return the

matter to the magistrate with instructions." *Id.* To be proper, an objection must be both timely

and specific. *U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). An

objection is timely if it is filed within fourteen days of the issuance of the Magistrate's

recommendation. Fed. R. Civ. P. 72(b)(2). To preserve an issue for *de novo* review, the

objection must be specific enough to "focus the district court's attention on the factual and legal

issues that are truly in dispute." *One Parcel*, 73 F.3d at 1060. The Federal Magistrates Act does

not "require any review at all, by either the district court or the court of appeals, of any issue that

is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

<u>*Pro Se* Plaintiff</u>

When a case involves a *pro se* party the court will "review his pleadings and other papers

liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v.*

*U.S. Government*, 472 F.3d 1242, 1243 (10th Cir. 2007). However, "it is not the proper function

of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991). A broad reading of a pro se plaintiff's pleadings "does not

relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim

could be based…conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Id.* Pro se parties must "follow the same rules of

4

procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)

(citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

<u>Summary Judgment</u>

The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A

fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Court will examine the factual record and make reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment.  *Concrete Works of Colorado, Inc. v.*

*City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

<u>Qualified Immunity</u>

Because Defendant Jonsgaard is asserting a qualified immunity defense the summary

judgment standard is subject to a "somewhat different analysis from other summary judgment

rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  The qualified immunity

doctrine "shields government officials performing discretionary functions from liability for

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th

Cir. 2011) (internal citations omitted).  To overcome summary judgment based on qualified

immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221.

This standard translates into a two-pronged inquiry: "First a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). A right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Id.; See also Saucier v. Katz*, 533 U.S. 194, 202 (2001). The plaintiff must satisfy both prongs to defeat a claim of qualified immunity. *Id.*

**Conclusions**

 (1) Violation of a Constitutional Right

In its *de novo* review, the Court has carefully reviewed all relevant pleadings, the Magistrate's Recommendation, Plaintiff's Objections to the Recommendation and Defendant Jonsgaard's Response to Plaintiff's Objection. Plaintiff alleges that Defendant Jonsgaard violated his fourth amendment rights through the use of excessive force and his fourteenth amendment rights by the failure to provide medical attention.

Fourth Amendment Excessive Force

Plaintiff alleges that Defendant Jonsgaard's use of his Taser, the "cross-face" maneuver, and physical force to subdue the plaintiff constituted excessive force. In determining whether an officer used excessive force, and thus violated the arrestee's fourth amendment rights, the ultimate question is whether the officer's actions are objectively reasonable in light of the facts

and circumstances confronting them. *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). Fourth Amendment claims are analyzed under this "objective reasonableness" standard, rather than substantive due process. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of the officer's actions must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Proper application of the standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These "Graham factors" frame the inquiry. *See Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).

First, the crime at issue was reasonably severe. Plaintiff was convicted of resisting arrest, a class 2 misdemeanor, and vehicular eluding, a class 5 felony. *See* Colo. Rev. Stat. § 18-8-103; § 18-9-116.5. Resisting arrest is not a serious crime for purposes of excessive force analysis. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 895 (10th Cir. 2009) (stating that petty misdemeanors under state law are not severe.) Due to the potential danger to the officer and public, this Court considers the felony of vehicular eluding to be a serious crime. Plaintiff disputes that he was speeding, running traffic lights, or that Defendant Jonsgaard activated his emergency lights behind him. However, from the view of an officer in Defendant Jonsgaard's position, it is reasonable that he would believe that the plaintiff was attempting to elude arrest. Further, this Court, as the Magistrate did, will treat the Arapahoe County jury verdict and conviction of vehicular eluding as an undisputed fact.

The second Graham factor considers whether the suspect posed an immediate threat to the safety of the officers or others. *Graham v. Connor*, 490 U.S. at 396. Here, again, the inquiry

is whether the officer's actions were objectively reasonable in light of the facts and circumstances. *Cavanaugh,* 625 F.3d at 664. Defendant Jonsgaard believed he was dealing with a person who was speeding and eluding arrest. Further, Defendant Jonsgaard believed plaintiff was ignoring or disregarding orders given at gunpoint while continuing to walk away towards a place of business. The Court agrees with the Magistrate that it would be reasonable for an officer in identical circumstances to believe that Plaintiff posed an immediate threat to the officer and possibly the public. As the Magistrate stated in her recommendation, "[i]t is clear that a reasonable officer would perceive a danger that the perpetrator would engage in activity that could endanger the officer and the members of the public given his continued evasive behavior and attempt to leave the presence of the officer on foot."

Finally, it is clear from the record that Defendant Jonsgaard believed that the plaintiff was attempting to evade by flight. Plaintiff ignored a marked police car with activated emergency lights and continued to flee on foot even when the uniformed officer emerged from his car with his gun drawn. Although plaintiff maintains that he was not fleeing the officer, either by car or on foot, a reasonable officer would believe that the plaintiff was doing just that. It is reasonable for an officer to perceive a heightened threat when a suspect refuses to comply.

Given the severity of the crime, that the plaintiff posed a threat to the officer and public, and that plaintiff was attempting to evade by flight, it is reasonable that an officer in that situation would use force to control the plaintiff. The question now is whether the level of force used by Defendant Jonsgaard was objectively reasonable in light of the facts and circumstances confronting him. Defendant Jonsgaard used his Taser once unsuccessfully. Defendant Jonsgaard then used physical force to bring the plaintiff to the ground. During this maneuver, Defendant Jonsgaard's Taser discharged, shocking the plaintiff across the face and shocking

Defendant Jonsgaard as well.  Defendant Jonsgaard then continued to use physical force to subdue the plaintiff.  According to Defendant Jonsgaard the plaintiff continued to struggle and resist arrest.  Plaintiff disagrees and says that Defendant Jonsgaard slammed his head against the pavement several times.

This Court agrees with the Magistrate that, in light of the undisputed facts, Defendant Jonsgaard's use of force was reasonable.  Based on the totality of the circumstances, a reasonable officer would find it appropriate, even necessary, to deploy his Taser and use physical force to prevent the plaintiff from leaving the scene, and to bring the plaintiff under control.   Therefore, this Court agrees with the Magistrate that Defendant Jonsgaard did not violate plaintiff's fourth amendment rights by deploying his Taser and tackling the plaintiff.

<u>Fourteenth Amendment Failure to Provide Medical Attention</u>

Under the Fourteenth Amendment, pretrial detainees are entitled to receive the same protections against denial of medical attention as convicted inmates do under the Eighth Amendment. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).   The Supreme Court has held that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" and thus constitute a Constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To be successful a plaintiff must show a "deliberate indifference to serious medical needs." *Martinez*, 563 F.3d at 1088.  An official or officer's deliberate indifference must be shown by demonstrating that officer knew of and disregarded an excessive risk to the arrestee's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  This analysis has both an objective and subjective component:  "the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," is also not to be condemned under the Supreme Court's case law. *Id.* at 838.

Defendant Jonsgaard argues that not only did he not know of and deliberately disregard plaintiff's serious medical needs, but plaintiff did not suffer any objectively serious medical needs to begin with. Defendant Jonsgaard states that the Aurora Detention Center's Initial Medical Screen suggested that plaintiff had nothing more than some abrasions. Further, Defendant Jonsgaard argues that he was not aware of any injuries to the plaintiff, aside from some "road rash," which cannot be characterized as an objectively serious injury. Thus, he could not have been deliberately indifferent to plaintiff's serious medical needs. Plaintiff argues that after being "subdued" by Defendant Jonsgaard, he suffered headaches, dizziness, and disorientation. As plaintiff believes these symptoms are indicative of a concussion, he argues that he should have been taken immediately to the detention center's "infirmary." The plaintiff was seen by medical staff at the jail.

In response to a question about whether the plaintiff had any injuries, Defendant Jonsgaard testified, "[n]othing visible that I remember. Maybe road rash, scuffs…" Doc. 73, Exhibit 4, 87:23-25. Road rashes and minor abrasions do not rise to the level of serious medical need. This Court agrees with the findings of the Magistrate that even if the plaintiff was experiencing headaches and dizziness, that also most likely does not rise to the level of serious medical need. Even if headaches, dizziness, and disorientation do qualify as "serious medical need," Defendant Jonsgaard has testified that he was unaware of these symptoms. Defendant Jonsgaard must both be aware of the risk, and consciously disregard it. The plaintiff has not

10

produced evidence that indicates that Defendant Jonsgaard did so here.  Plaintiff has failed to establish that Defendant Jonsgaard knew of and disregarded any risk to the plaintiff's health and safety.  Therefore, the Court agrees with the Magistrate that the plaintiff has not established a violation of his Fourteenth Amendment rights.

### (2) Clearly Established Law

As the plaintiff has not established that his Constitutional rights were violated, this Court need not decide whether the rights were clearly established in law at the time of the conduct.  However, in the interest of completeness, the Court will briefly address the second prong of the qualified immunity analysis.

In general, a rule is 'clearly established' if there is a Supreme Court or Tenth Circuit decision on point, or if the clear weight of the authority from other courts has shown the law to be established.  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (2007).  The relevant inquiry "in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Casey, 509 F.3d at 1283-84 (citing *Saucier*, 533 U.S. at 207).  In instances where excessive force is alleged, the Tenth Circuit has adopted a sliding scale approach:  "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Id.* at 1284.

Unlike in *Casey*, Defendant Jonsgaard did not use his Taser "immediately and without warning against a misdemeanant." *Id.* at 1286.  Instead, Defendant Jonsgaard issued several warnings prior to engaging his Taser and attempting to gain the plaintiff's compliance by physical force.  Defendant Jonsgaard reasonably believed that he, and others, were placed in

danger by the plaintiff's behavior.  Here, there are "substantial grounds for a reasonable officer to conclude that there was legitimate justification" for his conduct.  *Holland ex. Rel. Overdorff v. Harrington*, 268 F.3d 1179, 1197 (10th Cir. 2001).  The *Graham* factors establish "that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey*, 506 F.3d at 1286.  In this case, the plaintiff was ultimately convicted of a felony.  Further, an officer in identical circumstances could reasonably believe that the plaintiff was attempting to flee the scene.  Thus, Defendant Jonsgaard's use of force was reasonable and justified.  The Court agrees with the Magistrate that Plaintiff has failed to establish that Defendant Jonsgaard's conduct violated clearly established law.

**Order**

Based on the foregoing, the Court AFFIRMS the Magistrate Judge's Recommendation (#118).  Accordingly, Defendant Jonsgaard's Motion for Summary Judgment (#73) is GRANTED.   All claims against Defendant Jonsgaard are dismissed.

DATED this 16th day of November, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge